Our next case is number 20-12040 Dixon v. National Security of Alabama, Inc. Mr. Sawyer, I see you reserved five minutes for remodel. You may begin when you're ready. Good morning, your honors. David Sawyer here representing the appellant, Ms. Vanessa Dixon. We've challenged the summary judgment issued by the district court on three matters. One is the claim that Ms. Dixon made of discrimination with the EEOC. Second, the argument that was made in court to the judge of the hostile work environment that she suffered. And three, her claim of retaliation that she made with the EEOC that continued until she was constructively discharged. What is of concern with the district court's ruling is how it applies three different standards to a claim of discrimination that continued throughout Ms. Dixon's term of approximately one year while she was employed. Under the discrimination charge that was brought, the judge used the status that are the standard that there had to be a material adverse employment action taken and did not consider anything that had occurred throughout her period of employment. And we felt that was something that should have been considered by the court. He should have taken into consideration the factors that led up to or the motivation for the adverse employment action. Let me ask you this. Did you plead a hostile work environment claim? I know you were not a lawyer who represented Ms. Dixon below, and I'm familiar with the lawyer who represented Ms. Dixon below. Was there a pleading of the hostile work environment claim? There was that argument made to the court. There was not that argument made to the EEOC. She claimed discrimination and retaliation, but asserted factors that would have validated a hostile work environment claim. What I guess is confusing is when you allege discrimination and a hostile work environment, it leaves a breadth of area in between what the adverse employment action is, whether it's a termination or a demotion, and what takes place as to the terms and conditions of someone's employment that may not be hostile. It may not be abusive, but it is discriminatory where someone is treated differently. And again, I think there's a case law on point that talks about what is standard, but it leaves an open area of how people can be discriminated against, but I think retaliation... I just want to hear what the district court said about this pleading issue. So the district court says, while Dixon vaguely alludes to a hostile work environment, she never actually pled that claim in the amended complaint, the controlling pleading. And it says, it has a footnote and says, I really should just forget about that. I didn't care about that, but because I'm a nice guy, I'm going to go ahead and talk about that claim. So you're saying that the district court was wrong about that and you did in the amended complaint specifically plead a hostile work environment claim under Title VII? I think hostile work environment is part of the discrimination claim. I think the court has... Did the amended complaint use the word hostile work environment? Did it say anything about that? But again, the law says that I understand that when you make a claim of discrimination, it can be separated into two arguments. One, that you were adversely affected by the employee's decision to dismiss you or to demote you. And two, the hostile work environment is a part of that claim. Yeah. And look, I don't know how I would address this if I were a district court, but I'm looking at your complaint. It's got two counts. Count one is racial discrimination, violation of Title VII, section 1981. And it's basically, you terminated me because of my race. And then count two is damages. And I just don't see anything in there about a hostile work environment. I don't see anything in there about statements made to her that would create a hostile work environment. Don't see the words hostile environment, none of that in there. I see just straight up, you fired me because of my race claim. I mean, what am I missing there? Well, I think she filed it pro se. No, this is the amended complaint, though. This was the complaint. I was not involved. Okay. I was not involved. It was pro se, but it was the operative amended complaint, I guess is my point. Well, I, again, believe that is part of the claim of discrimination. I think it can be brought up at any time during the case because the factors that lead to the claim of discrimination. Again, discrimination requires the employer's adverse employment action, but the factors taken into consideration for the abusive environment creates that claim. Okay. And that would be my position. Also, the claim of retaliation that she made to the EEOC was something that throughout her period of employment there and resulted in her termination, which was continued retaliation. So I think that was covered and should be. She didn't have to go back and file another EEOC claim every time she was retaliated against. And I think the law is clear on that, that grows out of or is made part of. And I think the EEOC investigation was ongoing when she was terminated or constructively discharged. Again, I- I guess the question though is where the district court, for whatever reason, analyzed and addressed it on its terms and read it to include even as liberally as possible a hostile work environment claim. The parties briefed it as a hostile work environment claim. And on appeal, I don't think any error is assigned to the fact that the district court liberally read this complaint to include it. What are we to do under those circumstances? I guess what seems to be the circumstances that we're in. Your question is, is whether it should be an issue before the court? What do we do? Is it an issue before the court that we can do anything about? And what if so, what, what can we do given those facts? Well, again, I think when a claim of discrimination is made as bland as it may have been made in this case, the court has an obligation to look at the two different methods by which currently you can prove discrimination. And one is to show that there was an adverse employment action, in this case, constructive discharge. And the other is to consider all the factors that may have been involved at the time to, to illustrate the hostile work environment. I don't think that can, that, that can't be under, under our pleading obligations. In other words, even under notice, you have to put a party on notice that one of the claims is under a hostile work environment theory, and another is under a discriminatory intent theory. But, but that's not what we have here. What we have here is a district court who read the operative pleading filed pro se, and saying exactly what Judge Bratcher said, which is, hey, it doesn't say it normally, we would dismiss that, but I'm going to proceed as if it was alleged, and then analyzed it fully based on the summary judgment evidence. And then on appeal, as I can best as I can tell, the parties hit it head on and don't assign an error to the fact that the district court did that. So what do we make of that, I guess, is my question. I think it's properly before the court. The facts were argued, the judge ruled on that issue. This is what the judge said, I'm just quoting from the judge's quote, while Dixon vaguely alludes to a hostile work environment that was created by Williams harassment, she never actually pled that claim in the immediate complaint, the controlling pleading, such claims should generally be dismissed out of hand at sites and 11 certain cases. Nevertheless, proceeding as if Dixon had in fact done so, she must show and then starts to go through the analysis. I just I don't see the district court's analysis of this claim, as if it's saying, I'm going to say that she, she actually pled this, I see it as basically an alternative ruling saying, I should just dismiss this out of hand, but I'm going to be nice. And I'm going to go through the elements of a hostile work environment. And I guess my point is, isn't the district court saying, you know, I should just dismiss this out of hand, because she never pled it. Isn't that isn't that an alternative ruling on this? I mean, isn't that the district court saying, there's no claim here for hostile work environment, let's just assume there is, I'll just talk about it. I don't see. What do you have to say about that? I understand your position. I know that she did make a claim to the EEOC for retaliation. And I think the the the factors that were considered by the court in the abusive environment, applied directly also to the retaliation claim. So I think there's got to be one of these that because of was presented to the court, the court seemed to separate them and say, I can't find discrimination because I can't find the act of the employer to I can't find any conditions sufficient to support the hostile work environment. And as far as retaliation, I don't think that any action was ever taken against her in retaliation for her making her complaints to the EEOC. We disagree with most all of that. But I think that the claim of her retaliation must survive and it can it can include the factors that would be considered hostile work environment claim. Thank you, Mr. Sawyer, you'll have your full five minutes for rebuttal. Mr. Presley. Good morning. May it please the court. Name is Preston Presley and I represent the appellees in this case, National Security Services of Alabama, also known as DTA and I refer to them as DTA in this case. As you all just heard, this case is based on speculation. Miss Dixon wants this court to speculate as to her claims, where she did not include a hostile work environment claim in her two petitions that she submitted to court. And she also would want this court to speculate as to the facts and circumstances surrounding her claims. Starting in May of 2014, she was employed for the second time by DTA. In January of 15, Captain Williams became her supervisor. And this is when the actual issue began. We say in his opposition that these issues began not because of Miss Williams racial animus towards her, or for any issues that Miss Williams had towards her and in her race. It was actually because Captain Williams made her work. I think she can I can I ask you about the retaliation claim, please. Yes, you're okay. Is that is I read the district court's order. The district court said that there was an adverse action, in this case, either termination or the transfer. And the district court found that there was some activity but on causation. The district court said there was no link under the the McDonnell Douglas modified test for retaliation claims between the what was done to her and and and her complaint to either the EOC or because of mistake miss mistake. I know it's spelled differently or pronounced differently, but miss the complaint or that she made regarding the states discrimination claim, because there is no temporal proximity because it's too far away from each other to infer a causal connection. If I described that if I described the district court's order correctly, Yes, your honor. And I also say regards to Miss Tate. She submitted or there was an affidavit submitted on her behalf. They actually stated that she was not terminated based on any racial animus or any issues with company. I think she got a new job and she left company. And I understand that I'm just talking about the retaliation thing with regard to your with regard to Miss Dixon. So with regard to Miss Dixon, as I understand it, and correct me if I'm wrong, she makes the EOC complaint in mid April. That's great is at least the the evidence in the light most favorable to to her. I understand your client disputes it. She the calls are not returned. She's told to leave the property. She can't get a new assignment. And at the end of May, is that is that right? Not not actually judge. We will say about mid May, they actually change her post to a warehouse in Montgomery, right? She was actually paid more on this post than she would have been paid on the hunt. And then she meets with with I think Mr. Rawlings or one of the supervisors there and says, I can't lift the gate. Please assign me somewhere else. That's great. Hey, we understand we have a third place. She says I can't do that one because I medications and can't work at night. And, and then she tries to get more work. And she they don't answer the phone. She said again, according to her, she says she's hung up on she can't get more work. She's told to leave the property when she goes back to Huntington. And that happens at the end of May. Is that fair? That's correct. Okay. So it seems to me there's only about six or seven weeks between the EOC complaint and when all that stuff that I just mentioned happens. And again, that that's in the light most favorable to her. I know you dispute that that stuff happened. But if that's the case, don't we have some case law, which says that that is enough to create temporal, a close approximate or temporal connection between the complaint and the adverse action? Judge, I think there is case law out there that state that. But I think we also have to look at what the company actually did to remedy the situation. And I think them placing her on another post, which actually paid more kind of disavows that retaliation claim. They placed on this post and they did not have any documentation of this medical condition prior to them placing her on this post. They placed on this post, she's not able to move the gate. She comes into the office and says, hey, I'm not able to do this. This physical labor. Do you have another post? So they say, yeah, we do have another post. It's a nightly post. She then comes to him again and say, hey, I can't do his post because it's at night and I'm taking medication. They had nothing from her prior to placing her on this third post that would suggest she couldn't do any nightly duties. So I think the company did everything in their power to remedy any situation, even though it's our position that there was no racial animals, there were no issues in regards to race in regards to Ms. Dixon. I think the company did everything they could to remedy the situation. One question I have about that is, you know, usually in a case like this, a summary judgment case, there's, you know, we've got employee records. We've got a letter, a termination letter saying this is why we're firing you. We've got all this kind of stuff that we can look at and say, okay, this is the employer's reason why this happened here. It just seems like it's really disputed as to what happened in late May or early June, whenever she left. She says, look, I was basically kicked out. You say she kind of quit. Why isn't that something that a jury has to figure out since we just have this kind of dispute about it? Well, I don't think it's disputed. She still had the opportunity to go to either of these posts, whether it be the warehouse or the night post, and she chose not to show up to work. So it's that she actually abandoned the job. I think you also have to look at the fact that she went several weeks thereafter and filed for unemployment with the Alabama Labor Department. And in filing for unemployment, she did not cite racial issues or she did not cite any hostile work environment. She cited a lack of work, but she abandoned the job. She still could have went to the nightly post or even could have went to the warehouse post until they found her another post. And she decided to go to Alabama Department of Labor and file for unemployment. And that's essentially when she was terminated officially. So is there any paperwork, I guess, is my question in the record that we could rely on for that narrative? I think there may be the statement from the Alabama Department of Labor where she applied for unemployment. I don't think that fact is in dispute. And I think that documentation is in the record. Yeah, I guess the narrative that you're suggesting is one where the employer was trying to find her a post that she felt like she could do, and then she quit. And that, I mean, is there an email from somebody that says, oh, you know, Dixon hasn't shown up to work anymore? Unfortunately, I mean, is there just something like that, that we could look at that suggests this narrative? I don't think that there's actual documentation, but I think those facts are undisputed. I think that there's no dispute about her having the post at the warehouse, having the nightly post, and then not showing up for those posts. And I think the next thing that happened was she actually went to the Huntington post, which was the first post that she was transferred from. And that's when they said, hey, you're not supposed to be working here. You should either be at the nightly post or the warehouse post. But, Judge, we don't have any documentation of that or those facts. But I think they're undisputed at this juncture. Let me ask you this. So let's assume that she had a hostile work environment claim or that we have to address that for some reason. She says, you know, my supervisors use language like hang and drag around me or directed at me, and that that is sort of a racially inflected language. What do you say about that? Judge, there were some cases that were cited actually in the summary judgment order that talked about some of those issues, specifically the Barrow case. The Barrow case where this particular individual was subjected to Confederate flags, KKK letters, nooses on the property, and some racial epitaphs. And this court actually stated that that was not enough to substantiate the claim that was made for discrimination. We also have McCain v. Tillman, 11th Circuit case, 526 F. 1370, where... Counsel, the difference in those cases seems to be, though, and you're right, certainly, about the horrific allegations in those cases. But the difference in those cases seems to be that the conduct is not directed at the employee. In other words, the employee is overhearing things that are going on by other employees, but it's not directed at. And the difference here seems to be that these comments, the ones that Judge Brasher mentioned, were directed... The way that it's described by Ms. Dixon is continually and increasingly after the complaint were directed explicitly at her. Does that matter for the hostile work environment analysis? And again, that's assuming that such a claim had been properly alleged. I'll say two things. First of all, the comments that were allegedly made, because we... It's our position that they were never made. Comments that were allegedly made were made by a supervisor who did not have hiring or firing power, nor did she have decision-making authority. But does that matter for hostile work environment? In other words, isn't the employer vicariously liable for the employees unless there's an affirmative defense cited under LRF and about the supervisors not having responsibility? They possibly could be, Your Honor. The other issue in this case is the only direct or personal knowledge of any statement was the hang and drag statement. The other statements were hearsay. And I think that was... I agree with you that those statements are the ones that are the hot button statements here. Yes, sir. But I guess what concerns me with regard to this case and why I see it a little differently than Adams and McCain and some of the other cases is that it was continual. So in McCain, for example, there was one very racially charged comment made to the employer or employee, but it was a single one. And the court said that that wasn't enough to be pervasive, which is one of the requirements. Here, again, according to the deposition, and I know that you dispute that this happened, I understand, but according to Ms. Dixon's deposition, she states, quote, that it continued, that it intensified, and that it continued to happen. And it happened many occasions, is her deposition testimony. So that seems to be different than the one-off situation that some of the other cases have. Well, Judge, I think the only thing that was actually cited was the hang and drag incident. The other incidents were hearsay, and there were no other statements made directly from Captain Williams to Dixon that she cited. Let me ask you, I didn't feel like I got a response to my question, which was, is hang and drag, so the quote I have is that Captains Williams, sorry, I can't speak, Captain Williams warned her that she would hang her and drag her to the office if she didn't complete paperwork. Is there anything, and I just, what is racial about saying that you're going to drag someone back to the office if they don't do their work? I don't think there was anything racial about it, Your Honor, and that's our whole point. When she was on this Huntington Post prior to January 2015, it seemed as if she was just there, she was not doing much work, and just coming to work, getting the paycheck. Once Captain Williams became supervisor, she implemented a new system, she implemented new policies, she actually made her work and work for this paycheck that she was earning from DTA, and that seemed to be more of the issue versus any racial epitaphs or any racial issues that Captain Williams may have had with Dixon. We also have evidence that there were other African American employees on this Huntington Post. There was an issue that was somewhat unclear in regards to Ms. Dixon's deposition when she stated at one point that Ms. Yarborough, who was a white female, took over the Huntington Post, which would be a black female. And then at some other point of the deposition, she stated that both of these individuals actually worked the Huntington Post, and they were there when she was working the Huntington Post. So there also is an issue that there was never an individual that took the place of Ms. Dixon that was not within this same category, protected category. I think my time is up. Thank you, Mr. Presley. Rebuttal, Mr. Sawyer. Yes, let me speak primarily to the claim of retaliation that was made specifically by Ms. Dixon after she had agreed to be a witness and write her statement to the company about what was going on with another employee who had made a complaint, Ms. Tate. Things changed dramatically after she made her statement to the company about Ms. Tate. And then when she made her own EOC complaint in April, things changed dramatically. And again, we've cited those in our brief, how Captain Williams or Ms. Williams had stated and had been heard by Ms. Dixon that she was not fond of black people. She was going to make the Huntington location all white again. But that's just rank hearsay, right? I mean, I don't see how we can even consider that. I mean, we could consider that if you had gotten a witness to say that they heard that said or something like that. But, you know, I heard someone else told me that they heard someone else say is just classic hearsay. It may be hearsay, but it's very supported by the way she was being treated by Ms. Williams. I mean, she didn't just say, I'm going to drag you to the office. She said, I'm going to hang you and drag you to the office. Oh, yeah. So what do you think about the question I asked Mr. Presley? I mean, you know, I don't use language like that, right? I wouldn't tell my employees I'm going to hang them or drag them or anything like that. But is there anything racial about you? I mean, what if she had said, I'm going to punch you in the face, I'm going to kick you in the rear. I mean, there are all sorts of things that could be said that I wouldn't say, but there's nothing about them. Is there something racial about this? I think there's something racial about telling somebody you're going to hang them when that's what was going on 100 years ago, routinely. Ms. Williams acted that way and treated Ms. Dixon that way. The way she made her, in fact, I think it's further supported by the way she made her go fill up the patrol cars for the other white employees. She had to go pick up their newspapers and retrieve all their mail for the white employees. She was treated as a servant by Ms. Williams. And when she made her complaint in April, it took no longer than one month for the company to transfer her to a job that she could not perform. She'd been there for a year. And not until she made her complaint or made her statement as a witness for another black employee, and then made her claim to the EEOC in April, was she removed from her position. I don't think there's any claim of any disciplinary action ever taken against her. And again, it was all because of the way Ms. Williams treated her, and the company knew that. That's what she had reported when she had made her claim to the about the way Ms. Tate was treated. So I think it's sufficient evidence for a claim of retaliation to go to a jury. The judge did not agree, but he did not consider these many factors that had been taken place within, you know, a month from the time she made her claim to the EEOC and the time she was removed from her position. And again, the record reflects how she attempted to call time and again, seeking to remain employed and to find another post where she could work and keep her job. And they would simply hang up on her, slam the phone down, tell her not to call back again. And when she approached the office, they told her to get off the property or she'd be where she could perform her job physically. And the company knew her for conditions because she had stated that in her application, that she had conditions that would prevent her from performing physical work that made her lift things over a certain amount of weight. Let me ask you this question, which I asked Mr. Wesley, is there anything in the record, any sort of document at all that the employer created to suggest why she was no longer employed there? I don't know if there's a document that was drafted after her EEOC complaint by the company stating that she could not perform her work or would not perform her work, but it was only addressing the job that they had assigned her to after her EEOC complaint and the night job that she claimed that she could not do because of her medication. So why they transferred her in the first place, I don't know, but I think the record has significant facts to show that it was in retaliation one month after she filed her EEOC complaint. And that should have been, that should have survived summary judgment. Thank you, counsel. We appreciate your arguments. Court is adjourned. Thank you for your time.